Good morning all. Our first case this morning is the United States v. Johnson. Ms. Gambino. Good morning. Judge Flom, Judge Connie, and Judge Bauer. I'm here privileged to represent Mr. Johnson, and the core of this case turns around whether or not the search warrant affidavit provided sufficient probable cause to search the residence that was associated with Mr. Johnson. It is our position that it did not, and there were three problems with the warrant, and I'll address each of the three in turn. The three were, first of all and foremost, the law enforcement had no prior dealings with the cooperating informant in this case, and so this court looks with greater skepticism on what such informants say. Secondly, there was no independent law enforcement corroboration of what this informant said. And thirdly, there was insufficient information about Mr. Johnson himself and what his activities were or were not to justify a search of a residence associated with him. And it's our position that in addition to this case being very important to Mr. Johnson, approving of a search warrant based on the unverified statements of a self-interested cooperator without requiring corroboration of law enforcement that the residence is being used by the suspect for illegal activity opens the door, as the Sixth Circuit has said, to general warrants authorizing searches of any property owned, rented, or otherwise used by a criminal suspect. And this is just the type of broad warrant that the Fourth Amendment forecloses. So first of all, with respect to the cooperating informants in this case, they were a husband and a wife, and Mr. Coleman, the original informant, went through several iterations of his story, first refusing to talk, secondly saying that he was going to try and make a deal for his wife, and thirdly claiming that Mr. Johnson was one of his sources of supply for the heroin that was found in his house. He was caught red-handed. He had no choice but to say that, yes, this was his, and he wanted to make sure that his wife was not charged. His wife had the same goal. For her part, she was willing to point the finger at her husband and also mentioned Mr. Johnson in an effort to keep herself out of criminal conduct. The problem is that the police didn't take, or law enforcement didn't take, any steps to independently corroborate this, as is usually done and has been affirmed in this court's case law, particularly looking at cases like Lloyd and Jones and Peck and Olson. They didn't do any surveillance. They didn't even drive the informants by to affirm that the residents they were talking about was actually the same residents. They didn't do any controlled purchases, and they didn't do anything else to verify what these people said. They didn't look at Mr. Johnson to see if he was engaged in any suspect illegal activities. All the information they had about Mr. Johnson was that he was associated with the address that was actually owned or leased by a woman named Francine Johnson, who they claimed was Mr. Johnson's sister. This, in fact, was incorrect. They also saw him in December of 2010. The search warrant was executed in April of the following year. He had a parking ticket in front of that residence in December, and law enforcement had observed him coming to and from this building where the condo was located on a couple of occasions in February. So they didn't have any information at all about Mr. Johnson's contemporaneous activities, either in that building or outside that building. They did have a prior conviction from 2002 for Mr. Johnson, and that conviction, however, was listed without saying what exactly it was beyond that it was a distribution of drugs, but the drugs involved in that earlier conviction were cocaine and not heroin. Mr. Johnson had no history of dealing in heroin, of using it, or possessing it. So they had very little information about Mr. Johnson and what his contemporaneous activities were, and no information suggesting that there was illegal or corroborating the assertion by the informants that there was illegal activity going on in this particular condominium. And they couldn't even use the general excuse that this was a drug-trafficking area because the place where the condo was located in Greektown was not such an area. So there was very bare-bones corroboration of any of the information that was provided by these informants. The informants, on the other hand, in addition to their reasons for lying or providing information that misdirected the police in somebody else's direction, they also, at least with respect to Mr. Coleman, was a long-term heroin addict, and in fact he had told the agents at the time that he was about to be sick, meaning that he had not had his heroin dose and he was about to start going through withdrawal symptoms. And it's not clear in the record or in the affidavit what effect, if any, this had on the timing or the provision of information by this informant. In fact, there is some indication that was not provided to the district court or to the magistrate, well, not to the magistrate at any rate, that Mr. Coleman was offered an opportunity to confirm what he had said and corroborate his information by making a recorded call to Mr. Johnson, but he refused to do that because he said he was feeling tired, which could also mean that he was indeed experiencing the beginning to or in the middle of experiencing withdrawal symptoms from heroin. The fact that he was released for imprisonment does not say one way or another whether he was being treated for his symptoms and to what extent he was experiencing them. And while this court has said there's no per se rule that a confession or statements are involuntary or otherwise incredible because someone is a drug user, it's an indication that should have been addressed with respect to this particular informant and lends to the likely credibility and unreliability of this informant, which would suggest the need for further or additional law enforcement corroboration of what the informant said. So going back to Mr. Johnson, law enforcement knew at that time that his actual residence was in Tinley Park, and this information was not provided either. They knew that he was associated with this address or claimed that he was, but provided no information either in the affidavit or otherwise to indicate when or how or for how long or in what context he was associated with that particular address. So for all of those reasons, there was insufficient probable cause on the face of the warrant in order to justify the search of this particular residence. Didn't Mr. Coleman give, actually, the condo number? I mean, there was some specificity, wasn't there, Ms. Kinby? He did give a condo number. He wasn't able to give the address. The agents found the address, but he did give the condo number. He did not, however, provide any information about where in the residence the drugs might be held, and there was no corroboration that that was the particular unit that Mr. Johnson was visiting. He was pretty specific about the amounts that he dealt with the defendant, did he not? Yes, he was specific about the amounts that he was purchasing and selling, which, of course, he would be, and he could easily substitute Mr. Johnson's name for anybody else's name as well. There was nothing to corroborate that he was actually purchasing those 200 grams from Mr. Johnson as opposed to any of his other sources. All right. Will you reserve your time? I do wish to reserve my time. Thank you. Very good. Thank you. Ms. Kastanek? Good morning, and may it please the Court. Andriana Kastanek on behalf of the United States. The affidavit in this case summarized information obtained from an informant who had conducted a heroin transaction with the defendant two days prior to the search warrant in the defendant's apartment. The information provided by the informant was timely. It was supported by his firsthand observations of drugs in the defendant's apartment, and it was detailed. It contained information about the particular place where the heroin transaction occurred, including a condo number. He was shown a photograph of the condo building and positively identified it for the agents. It was detailed in terms of quantity and price, both on the particular day, two days prior, as well as a course of dealing with the defendant, and it was detailed in terms of the date on which that last transaction occurred. It also was corroborated in material respects. The agent separately interviewed the informant's wife, who provided similar information about the defendant's course of dealing with her husband. It was corroborated in terms of the defendant's link to the residence identified by the informant, and it was corroborated by the agent's seizure of heroin from the informant's residence that morning, which indicated it was substantially similar in quantity to the amount that he had obtained from the defendant just two days prior. For all of those reasons, the search warrant was supported by probable cause, and the magistrate did not err in issuing that search warrant. If the panel has no questions, the government would ask that it affirm the judgment of the district court. Thank you. Your Honors, I think the framing of this question is a little bit lopsided. It is certainly true that Mr. Coleman, the informant, provided detailed information about his own activities, but he did not provide sufficiently detailed information about Mr. Johnson, nor was there sufficient information about Mr. Johnson independently obtained by law enforcement, either about him or his residence, that would justify the search. And again, opening the door based on such little information would give law enforcement justification to search anyone's home on the word of an informant. Thank you. All right. Ms. Gambino, thank you. And, Ms. Gambino, you have the additional thanks of the court for accepting this appointment. Thank you. All right. Our thanks to all counsel. Case is taken under advisement.